### REESE v. WHITE.

1. The return by the sheriff of *no property* to an execution, at the suit of the endorsee against the maker of a promissory note, is conclusive to fix the liability of the endorser when the other requisitions of the statute have been complied with. And such return may be made at any time after the reception of the execution by the sheriff, who is liable to the endorser if the return is falsely made.

Writ of error to the Circuit Court of Lawrence county.

Action of assumpsit, commenced on the 16th of September, 1839, by White the endorsee of a promissory note made by John C. Price & Co. payable to Price and Puckett, and by them endorsed, against Reese, a subsequent endorser. The declaration describes the note as being dated the 1st of March, 1838, payable ten months after date. The several endorsements are alledged to have been made before the maturity of the note. The declaration alledges that, when this note became due, the plaintiff, as endorsee, brought his suit against the makers in the County Court of Morgan, returnable to third Monday of February, 1839, which was the first Court to which the makers could be sued, and prosecuted the same to judgment at the June term, 1839. The amount of the judgment is stated, and the record vouched. It also alledges that, on the 15th of August of the same year, the plaintiff caused a writ of *fieri facias* to be issued on the said judgment, and delivered the same to the sheriff of Morgan county, who, on the 7th of September of the same year, returned the said writ *no property found.* It

Reese v. White.

then concludes with a *super se assumpsit* for the amount of the note, and with the usual breach.

The defendant demurred to the declaration, but the demurrer being overruled, he then pleaded the general issue; on which a verdict was found and judgment rendered for the plaintiff.

The defendant prosecutes the writ of error, and assigns that the Circuit Court erred in overruling the demurrer.

ROBINSON, for the plaintiff in error, insisted that the action was premature, inasmuch as the *fi. fa.* was not returnable until February, 1840. The return of the sheriff made prior to the proper time ought not to prejudice the endorser. The intention of the statute is to substitute the return of *no property*, in the stead of demand and notice; but the endorser is entitled to have the execution retained so long as it can have any legal effect. [Cavenaugh vs. Tatum, 4 S. & P. 204.]

A similar rule to that which prevails when equitable assets are sought to be subjected to a judgment at law, ought to be recognized in this case as necessary to charge the endorser. In equity, the creditor must exhaust his legal remedies. [4 John. Chan. 671, 681, 691.] Nothwithstanding the return day of the execution has passed, yet the creditor cannot go into chancery unless the execution is in fact returned. (1 Paige Ch. 305, 308.) So likewise, if the execution is returned *before* the return day, the creditor cannot go into chancery. 3 Paige Ch. 311.

He also cited 3 Bibb 227, and 2 H. & M. 105, to shew what are considered to be the rights of an endorser in Kentucky and Virginia.

HOPKINS, for the defendant in error, relied on the statute, Aikin's Digest 330, to shew that the return of the sheriff was conclusive. If false, the endorser has his remedy by action. The sheriff, in this State, is not tied down to the return day of the writ to make his return, but he is required by the statute to make it at least three days previous thereto. (Aikin's Digest 279, s. 119.)

There is a strong analogy between this case and that of bail, who may become liable by the return of the *ca. sa.* made at any time. (3 Burr. 1360; 2 Sell. Pract. 46.)

GOLDTHWAITE, J.—The requisites to charge the endorser of a note, of the description stated in the declaration, are defined with much precision by the statute. When the sum due on the note is more than fifty dollars, the endorsee must commence a suit against the maker, at the first term of any Court of the county where he resides, to which it can be brought. Judgment must be recovered, and a writ of *fieri facias* returned by the proper officer, *no property found.* (Aikin's Digest 330, s. 12, 16.)

These matters are evidently intended to stand in the place of the demand of payment from the maker, and the notice to the endorser, which were previously required by the law merchant. It seems to have been intended also, to establish a fixed and definite rule, by which every one might easily know his own liability, or enforce his claims against others. The statute does not make the liability of the endorser depend on the insolvency of the maker. This it might be difficult to establish with certainty, and it might in all cases be made the subject of dispute; therefore, the enactments have made the return of *no property* to a writ of *fieri facias*, one of the essential matters to fix the liability of the endorser. If the time when this matter was to be ascertained, had been considered as important, the Legislature doubtless would have determined it by some precise rule; but this has not been done, and we can perceive no good reason why it should be extended beyond the period enacted by the statute, which we consider to be the date of the return.

The essential matter to be ascertained by the return, is that the maker of the note has no property to satisfy the judgment; and this can be as well ascertained at one time as at another. Whenever the proper officer can truly make this return, he is authorised to make it; and thereupon the liability of the endorser becomes complete, if the necessary steps have been pursued.

There is a striking analogy between the contract of bail and the contract made by an endorser, under these statutes. The former agrees to surrender his principal whenever a *ca. sa.* shall issue. The latter contracts that the maker will have a

sufficiency of property in the county of his residence, to satisfy the judgment which the endorsee may obtain against him, provided he sues to the first term of the Court. In either event, the return of the sheriff is conclusive; and in the case of bail, the *ca. sa.* may be returned at any time. We can perceive no good reason why the analogy should not hold with respect to the return of the *fi. fa.* when the object is to charge the endorser. If the execution is issued, within a short time previous to the term of the Court to which it is returnable, no one would suppose the return, when properly made in that event, would be insufficient to charge the indorser ; and why should it be, after the same time has elapsed, but the return is made before the return day ? The fact to be ascertained by the return is, that the maker of the note *has* no property, and it is immaterial *when* he became in this condition; because, whenever he is thus, the liability of the endorser attaches.

Most of the reasons adduced by the counsel for the plaintiff in error, would be equally forcible to show that the return to the sheriff might be impeached, if the object of these statutes is to give time to make the money from the property of the maker. The case of Goodell vs. Stuart, 2 H. & M. 105, is decisive, however, to shew that the return, whether true or false, ascertains the liability.

We have not adverted to the cases in chancery cited from Paige, because there is a material distinction between the ascertainment of a liability, in the mode appointed by the statute, and the pursuit of an equitable remedy. In the first, the rule is fixed and arbitrary, whilst in the latter, it is dependent on a long course of decision peculiarly connected with the jurisdiction of the Court.

If the sheriff, in a case like the present, makes a false return, and thereby a liability is cast on an endorser, he has a clear remedy ; and this would be so without reference to the time when the return was made.

We entertain no doubt of the correctness of the decision of he Circuit Court, and its judgment is affirmed.